FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 SEP 30 PM 3: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

FORD MOTOR COMPANY,　　　　　　)

　　　　Plaintiff,　　　　　　　　)

　　　　　　　　　　　　　　　　)　　CIVIL ACTION NO.

v.　　　　　　　　　　　　　　　)

　　　　　　　　　　　　　　　　)　　89-AR-1085-S

UNIQUE MOTORCARS,　　　　　　　)

　　　　Defendant.　　　　　　　　)

ENTERED

SEP 3 0 2002

## MEMORANDUM OPINION

The court has been asked by plaintiff, Ford Motor Company ("Ford"), to find defendant, Unique Motor Cars ("Unique"), in violation of the consent decree entered in 1989 in the above-entitled case by the judge of this court to whom the case was then assigned.  This court has conducted an evidentiary hearing on Ford's petition for a rule to show cause why Unique should not be held in contempt.  With the consent of the parties, the court did not view the significant video tape offered into evidence by Ford during the hearing, and instead the court waited until it found the time to view the tape carefully in chambers.  The court has now done that.

Both parties have asked the court to amend the old decree.  Ford wants the decree tightened up to remove all ambiguity and to make it absolutely clear that Unique's *modus operandi* constitutes a regular and constant violation of Ford's Cobra trademark.  On the other hand, Unique wants the decree loosened in order to recognize the facts of business life and to make it possible for Unique to stay in business without having to walk on eggshells, with Ford constantly monitoring it for the slightest violation.  The whole story is told by the competing proposed opinions and decrees submitted by the parties.  Ford's proposal is

50

attached hereto as Exhibit "A", and Unique's proposal is attached hereto as Exhibit "B". They are incorporated herein as reflective of the facts and illustrative of the problems presented.

The video that the court finally got around to looking at was, in all probability, the precipitating cause of Ford's current petition. It was clandestinely filmed by a Ford representative who carried a video camera into Unique's place of business in Gadsden, Alabama. The video shows that Unique is in the business of selling what are well understood by the buying public to be "Cobra replicars", which are replicas of the famous Cobra sports car sold by Ford long ago. The video further shows several cars of the unique Cobra design, a design which Cobra's vociferous fans obviously get excited about. Some of the cars in Unique's garage had the word "Cobra" displayed on their windows. The video caught the word "Cobra" on other cars. A logo with what appeared to be a cobra snakehead was shown on more than one of the vehicles, some of which were apparently manufactured and/or owned by Unique itself and some of which apparently were owned by third parties and offered for sale through Unique as consignee. Which of the cars bearing the Cobra mark were owned by entities other than Unique is unclear.

The problems that the 1989 consent decree were intended to resolve, but obviously did not resolve, arise from the fact that Ford does not own the distinct **design** of the famous car. That **design** is instantly recognized by sophisticated sports car enthusiasts as a "Cobra," whether or not the particular sleek low—slung car contains the almost equally famous **logo**, which is owned by Ford. Unique has no realistic way to prevent a third—party owner from ordering and placing on its replica the

Cobra logo, which can be easily affixed to the steering wheel, to the shift knob, to the hood, or, by stencil, to a window.  The potential for controversy is inherent in the different ownerships of the two intellectual property rights.  Controversy and continuing litigation are virtually guaranteed, especially when the logo owner has the will and the wherewithal.  Ford wants to protect the trademark it owns, but protection is impossible unless it can make Cobra replica manufacturers like Unique into its **enforcers**, something the 1989 decree did not accomplish, but which Ford now wants the court to order by indirection.  While ostensibly designed for the purpose of eliminating controversy, the decree as now written will continue to create controversy so long as Unique continues in the business of manufacturing and selling "Cobra replicars".  How can a business manufacture and sell "Cobra replicars" without allowing anyone in its presence, or not in its presence, to call the name of the poison hooded snake, well known as a sacred animal in India?  It cannot be done.

This court cannot allow itself to become a permanent monitor of Unique's business practices, with Ford looking over both shoulders. Unique was mismatched with Ford in 1989, and is still mismatched.

Whether Ford has succeeded or failed in obtaining injunctive relief against other "Cobra replicar" manufacturers and/or sellers in other states in other courts should not determine the outcome in this court. What Ford expects to accomplish by its aggressive litigation stance, other than simply to vindicate its ownership of the logo, is hard to understand.  If there is a real pocketbook issue here, the court cannot find it, that is, unless the purpose is to force Unique and other replica manufacturers to pay some sizable money to Ford for the privilege of

affixing the Cobra name and logo to their replicas.  This would, of course, be a way to get Ford off their backs, if Ford were interested. Whether the parties have tried to arrive at such a solution, the court does not know.  This court simply came into the controversy thirteen years late.

## Conclusion

Both because the parties, in frustration, both seek a modification of the 1989 decree, and because that decree has not achieved its purpose, there are changed circumstances that justify a modification of the decree.  See *Sizzler Family Steakhouses v. Western Sizzler Steakhouses, Inc.*, 793 F. 2d 1529, 1539 (11th Cir. 1986); *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 251-52, 88 S. Ct. 1496, 1501 (1968). There is one more changed circumstance calling for modification, namely, the increased degree of loyalty of the vociferous fans of the Cobra.  If a fan can't have the original, he wants what looks like it.  Not many automobiles have their own magazines.  This court may not fully appreciate the mystique of the car and the intensity of the loyalty that causes people to drive several thousand miles to Gadsden, Alabama, just to savor a replica of an old sports car, but the court finds that there does exist such a mystique and such an intensity.  Unique can either take advantage of this unique market or get into some other business.  It cannot sell Cobra replicas without ever letting the word "Cobra" pass its lips, and without the hooded snake that people automatically associate with its product ever showing up on somebody's car.

Because to award Ford an attorneys fee, even if Unique had been in

technical violation of the consent decree before its present amendment, which it was not, would be punitive and would violate basic principles of equity.

A separate decree will be entered consistent with this opinion. DONE this _30th_ day of September, 2002.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

FORD MOTOR COMPANY,                )
                                   )
        Petitioner,                )
                                   )    Civil Action No. 89-AR-1085-S
        v.                         )    Hon. William M. Acker, Jr.
                                   )
UNIQUE MOTORCARS,                  )
                                   )
        Respondent.                )

## PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

### FINDINGS OF FACT

#### The Parties

1.      Ford is a Delaware corporation with its principal place of business at The American Road, Dearborn, Michigan. (Consent Judgment at ¶ 2 (Exhibit A)).

2.      Unique is an Alabama limited partnership doing business in the state of Alabama, with its principal place of business at 203 East Broad Street, Gadsden, Alabama. (Consent Judgment at ¶ 3 (Exhibit A)). Unique manufactures kits used to construct replicas of a racing car developed by Ford and Carroll Shelby known as the COBRA (the "COBRA car").

#### Ford's Rights In The COBRA Trademark

3.      Ford owns and uses the trademarks COBRA and design of a Cobra Snake ("Snake Design") for automobiles and automobile parts, vehicle floor mats and related parts and accessories. (Consent Judgment at ¶3 (Exhibit A)). Ford has obtained registrations from the United States Patent and Trademark Office for its COBRA Marks. These registrations include, but are not limited to, the following:

*EXHIBIT "A"*

| MARK | REG. NO. | GOODS |
|---|---|---|
| COBRA | 807,185 | Passenger and racing automobiles and components thereof - namely bodies, chassis, and bumpers |
| COBRA | 1,562,071 | Automobile engines and parts thereof |
| COBRA | 1,912,622 | vehicle floor mats, door mats, carpet |
|  | 2,265,966 | Floor mats for motor vehicles |

These registrations are all valid and in force.  In addition, Registration Nos. 807,185, 1,562,071 and 1,912,622 have all been declared incontestable under 15 U.S.C. §1065, and are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. §1115(b).

### The 1989 Consent Judgment

4.       Unique is bound by a Consent Judgment entered by this Court on October 12, 1989 (the "Consent Judgment").  (Consent Judgment (Exhibit A)).  The Consent Judgment permanently enjoins Unique, its officers, agents, servants, employees, attorneys and all others in active concert and participation with them from, *inter alia* :

(a)    using COBRA or the design of a snake as a trademark on its automobiles, automobile components, advertising, brochures or other literature (Consent Judgment at ¶ 5 (Exhibit A));

(b)    affixing "by badge or otherwise . . . COBRA or a snake design to Unique's products" (Consent Judgment at ¶ 5(b) (Exhibit A)); and

(c)    using COBRA as part of any trade name.  (Consent Judgment at ¶ 5(f) (Exhibit A)).

5.    The Consent Judgment further requires that: "Unique shall state in its advertising and promotional materials, whenever possible, that 'COBRA is a trademark of Ford Motor Company; Unique Motorcars products have no connection with Ford.' " (Consent Judgment at ¶6 (Exhibit A)).  The Consent Judgment also provides that:

> It shall not be a violation of this order for Unique to manufacture and sell replicars or car kits of the historic COBRA automobile or to make factual or historical use of the word COBRA in a non-trademark fashion.  For example, it shall not be a violation of this order to use in advertising phrases such as "replicas of the 1967 COBRA," or "Parts for classic 1967 COBRA Replicars."  Also, it shall not be a violation of this order to affix badges or decals to Unique's products containing the word COBRA provided that they prominently display Unique's trade name or logo in larger letters and comply with the other guidelines in the preceding sentence, for example: "UNIQUE MOTORCARS 1967 COBRA REPLICAR." (Consent Judgment at ¶7 (Exhibit A)).

**First Contempt Litigation**

6.    On August 29, 1996, Ford filed its first petition for rule to show cause why Unique should not be held in contempt for violations of the Consent Judgment.  On October 1, 1996, after a hearing on the motion, the Court warned Unique not to violate the Consent Judgment again and awarded attorneys' fees to Ford for bringing the petition.  (Weaver dep. at 44:5-18 (Exhibit I)).

**Second Contempt Litigation**

7.      Despite the Court's 1996 judgment, and the Court's warning, Unique has continued to violate the Consent Judgment in various ways.

**Use Of The COBRA Marks In The Display Of Cars In Unique's Showroom**

8.      Unique maintains a showroom at its manufacturing facility in Gadsden, Alabama, and displays automobiles in this showroom to prospective customers to show what they can expect to receive when they purchase a kit from Unique. (Weaver dep. at 26:11-22; 27:14-23; 28:4-7 (Exhibit I)). Unique admits that displaying automobiles in its showroom is a significant part of Unique's promotion and advertising. (Weaver dep. at 26:11-22; 27:14-23 (Exhibit I)).

9.      Unique displays a silver copy of the COBRA car in its showroom that included a side window, known as a "windwing", etched with the word COBRA. (Blum Decl. at ¶5; Weaver dep. at 29:21-23, 30:1-2 (Exhibits B, I)).

10.     Unique also takes prospective customers into its manufacturing facility to view at least three of its custom automobiles that copy the COBRA car. These cars have hood and trunk emblems bearing the COBRA mark in combination with the Snake Design. (Blum Decl. at ¶13, Exs. 5, 6 (Exhibit B)). These cars also have windwings etched with the COBRA mark and floormats that also displayed the COBRA mark. (Blum Decl. at ¶¶14-15, Exs. 7, 8 (Exhibit B)).

**Internet Violations**                          .

Unique's websites

11.     Unique launched its first website in October 2000. (Weaver dep. at 17:19-23, 18:1-4, 53:10-18 (Exhibit I)). Unique presently maintains two websites to promote its goods and services. One of these sites is located at http://www.uniquecobrareplicas.com (the "Unique

website"), and the other is located at http://www.cobracountry.com/unique (the "Unique Cobra Country website"). (Weaver dep. at 17:19-23, 18:1-4, 53:10-18 (Exhibit I)). The Unique website and the Unique Cobra Country website constitute part of Unique's advertising. (Weaver dep. at 17:19-23, 18:1, 53:10-18 (Exhibit I)).

Photographs On The Unique Website

12.     Unique uses the COBRA mark, either on its own or in conjunction with the Snake Design, by displaying these marks on vehicles shown in photographs on the Unique website.

13.     The photographs in the Gallery of Cars section of the Unique website included photographs of an automobile with a colorable imitation of the Snake Design on the hood, and of a vehicle that displayed the COBRA mark on floormats. (O'Brien Decl. at Exs. 2, 3 (Exhibit C)). It was not until after Ford filed its petition for rule to show cause that Unique changed the website to remove these photographs. (Weaver dep. at 94: 1-20, 98:17-23, 99:1-8 (Exhibit I)).

Internet Advertising

14.     Unique advertises itself on the Internet to Internet users as "A company dedicated to Cobra Cars that sells fine custom Cobra replicas and cabra accessary items" (sic).  This reference is plainly visible to anyone searching the Internet for the Unique website or sites relating to COBRA cars. (Report of Michael D. Palage at ¶¶18-21, 24, 28, 33, 41-44, 51-52, Attachments 9, 10, 14, 15 (Exhibit K)).  For example, the Overture, HotBot, and AlltheWeb search engines all describe the Unique website using the language identified above or language similar thereto. (Palage at ¶¶41-44, 53-54, Attachments 9, 10, 15 (Exhibit K)).

15.     Unique arranges for this advertising by using the Cobra mark in metatags. Metatags are a type of computer code that provides information to describe the content of a web page. (Palage at ¶¶18-21 (Exhibit K)).  This information is detected by Internet search engines,

which use the information in metatags to match websites to search requests and to describe websites.  (Palage at ¶¶18-19 (Exhibit K))

16.    Unique's use of "Cobra" and "Cobra cars" as metatags increases the probability that Internet search engines will identify Unique's websites as highly ranked positive matches for search inquiries related to genuine COBRA automobiles.  (Palage at ¶¶24-56, Attachments 9-17 (Exhibit K)).  For example:

- A search for "427 cobra kits" returns the Unique website as the sixth-ranked result on the first page of results (Palage at ¶¶41-42, Attachment 9 (Exhibit K));

- A search for "289 fia cobra" returns the Unique website as the seventh and eighth best matches out of 945 matches (Palage at ¶¶45-46, Attachment 11 (Exhibit K)); and

- A search for "cobra 289" returns the Unique Cobra Country site as the sixth best match on the first page of results (Palage at ¶¶47-48, Attachment 12 (Exhibit K)).

Because Internet users typically do not review more than the first few pages of a search engine's response to a particular query, securing such high placement in search engine results is a key element of marketing goods and services on the Internet.  (Palage at ¶57, Attachment 18 (Exhibit K)).

17.    Unique further incorporated into the Unique website content from other websites through "framing", a design technique in which the Unique website was divided into separate areas allowing content in some areas to remain fixed and content in other areas to change depending on a user's actions.  (Palage at ¶¶59, 76-90 (Exhibit K)); *Digital Equipment Corp. v.*

*Altavista Technology*, 960 F.Supp. 456, 461 n.12 (D. Mass. 1997).  In particular, Unique

incorporated into the Unique website under the Unique banner content from third party websites

offering for sale copies of the COBRA car.  (O'Brien Decl. at ¶¶9-12, Exs. 7, 10; Weaver dep at

96:10-19, 97:17-20 (Exhibits C, I)).  The Unique website was set up so that a banner identifying

Unique by name remained in a fixed position at the top of the page, while content below the

banner changed depending on an Internet user's actions.  (Palage at ¶73 (Exhibit K)).  To the

user, the content would all appear to originate from Unique, and that Unique was using the

COBRA mark to sell cars or at least was promoting or affiliated with their sale, a belief that is

reinforced by the fact that the web browser software would continue to identify the URL for the

Unique website.  (Palage at ¶¶72, 74 (Exhibit K)).  Unique stopped this framing only after Ford

filed its petition for rule to show cause.

### Unique's Improper Advertising

18.     Unique is also placing advertising in printed publications and on Internet websites

that use the COBRA name.  For example, Unique placed a fourteen page advertisement in the

1999 edition of *The Big Guide To Cobra Kits And Parts*.  (Shaw dep. at 169:11-25, 170:9-14,

172:21-25, 173:1-10, Ex. 47 (Exhibit J)).  Unique has also placed an advertisement on Cobra

Country, a website that serves as an "Internet mall" for goods and services relating to COBRA

automobiles.  (Weaver dep. at 52:21-23, 53:1-18; Palage at ¶¶91-94 (Exhibits I, K)).

19.     Furthermore, Unique has published advertising materials that omit the disclaimer

required by the Consent Judgment, which requires that, where possible, Unique shall state in its

advertising and promotional materials that "Cobra is a trademark of Ford Motor Company" and

that "Unique Motorcars products have no connection with Ford."  (Ex. A, Consent Judgment at

¶6 (Exhibit A)).  Despite the clear language of the Consent Judgment, Unique has published

advertising that states only that "Unique is in no way affiliated with the holders of trademark rights involving the COBRA name." (Weaver dep. at 51:11-19, Ex. 8 (Exhibit I)). This disclaimer fails to identify Ford as the owner of the COBRA mark as required by the Consent Judgment. In addition, Unique has failed to include the disclaimer on all pages of its website. (O'Brien Decl. at ¶¶3-8, Exs. 1-5 (Exhibit C)).

### Unique's Use Of Its Dealers To Circumvent The Consent Judgment

20.     Subsequent to the entry of the Consent Judgment in 1989, Unique established a network of dealers to advertise and sell its products. (Weaver dep. at 18:20-23, 19:1-2 (Exhibit I)). Unique effectively uses its dealers as another advertising medium, and benefits economically from their use of the COBRA Marks.

21.     Unique's dealers operate in active concert with Unique to promote and sell Unique's products and services under the COBRA Marks.

22.     Robert Shaw, who does business as Operations Plus in Santa Ana, California, was formally appointed as a dealer of Unique's products in 1993. (Shaw dep. at 24:20-25, 25:1-25, 26:1-3, Ex. 3 (Exhibit J)). Unique referred potential customers to Shaw within the last few years so that customers could examine Shaw's car, which bears the COBRA Marks, to decide if they were interested in purchasing a kit from Unique. (Shaw dep. at 34:6-25, 35:1-17 (Exhibit J)). Shaw identifies himself as the West Coast representative for Unique Motorcars in the Shelby American Automotive Club newsletter. (Shaw dep. at 114:7-25, 115:1-15, 125:4-25, 127:19-25, 128:1-2, Exs. 33, 34, 54 (Exhibit J)). Shaw also offers for sale emblems bearing the COBRA Marks when he displays his Unique car at numerous trade shows. (Shaw dep. at 63:4-22 (Exhibit J)).

23.     Unique has used pictures of Shaw's car in its monthly magazine advertising from

at least January 1998 to as recently as May 2002, which specifically identifies Shaw as the owner

of the car, and directs people's attention to this car even though it displays the COBRA Marks.

(Second O'Brien Decl. at ¶13, Ex. 12; Shaw dep. at 175:4-25, 176:1-7, Exs. 61, 63 (Exhibits D,

J)).

      24.     Unique contacted Shaw after Ford filed this action and instructed him not to use

the COBRA Marks.  (Shaw dep. at 164:11-22 (Exhibit Q)).

      25.     Bruce Botti of South Windsor, Connecticut, is another dealer for Unique who

does business as "Botti Enterprises."  (Weaver dep. at 97:17-20 (Exhibit I)).  Botti has a website

located at http://www.cobra427.iwarp.com.  (Weaver dep. at 97:21-23, 98:1-6 (Exhibit I)).

Unique has a link to Botti's website on the Unique website.  (Weaver dep. at 97:21-23 (Exhibit

I)).  Botti has a photograph on his website of a car that clearly displayed the COBRA Marks.

(O'Brien Decl. at ¶10, Ex. 7 (Exhibit C)).  The Unique website displayed content from Botti's

website, including pictures of automobiles bearing the COBRA marks.  (O'Brien Decl. at ¶10,

Ex. 7 (Exhibit C)).  It was not until after Ford had filed the pending petition seeking a finding of

contempt that Unique contacted Botti to instruct him to change his website and remove the

depictions of the COBRA mark.  (Weaver dep. at 98:17-23, 99:1-8 (Exhibit I)).

      26.     Butch Capps, who does business as Mid-South Gear in Knoxville, Tennessee, is

another dealer of Unique's products.  (Weaver dep. at 96:20-23, 97:1-16, Ex. 23 (Exhibit I)).

Unique refers to Mid-South on the Unique website as a dealer.  (O'Brien Decl. at ¶8, Ex. 5

(Exhibit C)).  Capps represents himself as a dealer of Unique's products at races and car shows,

and exhibits at these shows a copy of the COBRA car that he built that has emblems displaying

the COBRA marks on the hood, trunk, and steering wheel.  (Second O'Brien Decl. at ¶11, Exs. 6-

9; Summitt Decl. at ¶¶7, 9 (Exhibits D, F)).  The windshield of the Unique car Capps was

displaying had "UNIQUE MOTORCARS" printed on its windshield. (Summitt Decl. at ¶8 (Exhibit F)). Capps informs potential consumers that the Unique car he displays is an example of the type of car Capps builds and sells, and that any car purchased through Capps would look just like it. (Summitt Decl. at ¶10 (Exhibit F)). Capps has also displayed his copy of the COBRA car in automotive magazines in connection with articles discussing Unique's products and that identify Capps as a dealer for Unique. (Shaw dep. at Ex. 57 (Exhibit J)). Unique also advertises in these mazazines. Capps also worked with Unique to produce a television program that provided instructions on how to build a copy of the COBRA car. (Second O'Brien Decl. at ¶¶2-5, Ex. 1 (Exhibit D)).

 27. Geary Sarno, who does business as Sarno Racing in Harrisburg, Pennsylvania, is another dealer for Unique. (Shubert Decl. at Exs. 1-4 (Exhibit G)). Sarno bought a kit from Unique, and distributes business cards identifying himself as a builder of kit cars. (Shubert Decl. at Ex. 4; Invoice (Exhibits G, N)). Sarno also maintained a website through which he offered Unique products and promotional materials, including Unique's promotional and factory tour videotape, as recently as February 2002. (Second O'Brien Decl. at ¶¶7-10, Ex. 5 (Exhibit D)). The promotional videotape that Sarno offered depicts the COBRA Marks several times. (Second O'Brien Decl. at ¶12, Ex. 10, 11 (Exhibit D)). Although Unique claims not to have sold this videotape since October 1996, Sarno offered copies of this videotape for sale as recently as March 2002. (Shubert Decl. ¶¶4-5, Ex. 1; Weaver dep. at 85:1-15 (Exhibits G, I)). Unique also admitted that this videotape is still offered for sale on its website. (Weaver dep. at 85:1-6 (Exhibit I)).

### Use Of Improper Trade Names

 28. Unique hosts its website at uniquecobrareplicas.com. (Weaver dep. at 54:17-23

(Exhibit I)). The Unique website also contains a copyright notice identifying the author of the site as "uniquecobrareplicas.com." (Weaver dep. at 140:16-22, Ex. 23 (Exhibit I)). Unique is therefore using "uniquecobrareplicas.com," a name that includes the COBRA mark, as a trade name to identify its business on the Internet.

29.     Unique also hosts an annual event at its facility called COBRAFEST. (Weaver dep. at 108:6-12 (Exhibit I)). The COBRAFEST event is open to the public, including prospective customers. (Weaver dep. at 109:7-11 (Exhibit I)). Approximately thirty-five to fifty of Unique's customers exhibit their Unique cars at COBRAFEST and about seven to eight hundred people visit COBRAFEST each year. (Weaver dep. at 109:7-22 (Exhibit I)). Unique therefore uses COBRAFEST as a tradename to identify its business and as a service mark to identify its promotional event.

### Unique's Revenues

30.     In a declaration executed under penalty of perjury in the case of *Ford Motor Co. v. Factory Five Racing, Inc.*, C.A. No. 00-10399 RWZ (D. Mass.), Maurice Weaver, one of the principals of Unique and Unique's corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure for Unique's deposition in this proceeding, stated that Unique annually has sold approximately $600,000 worth of replicas of the COBRA automobile and related parts and accessories from 1990 through 2000. (Weaver dep. at Ex. 2, ¶7 (Exhibit I)). Unique's gross sales for the years 1997 to 2001, the time period since the last contempt hearing, were therefore $3,000,000.

### CONCLUSIONS OF LAW

### Jurisdiction And Venue

31.     This Court has subject matter jurisdiction over this matter under 28 U.S.C.

§§1331, 1332, and under its inherent power to enforce compliance with its orders. *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt"). Venue is proper in this district under 28 U.S.C. §1391(a)(1) because the respondent is located in this district and because the order to be enforced was issued by this Court.

### Unique's Violations Of The Consent Judgment

32. Unique has violated the 1989 Consent Judgment through the various uses of the COBRA Marks set forth above. In fact, Unique has admitted in its briefs that it used framing on the Unique website and that it displayed photographs on its website of cars that bear the COBRA Marks. (Respondent's Memorandum In Reply To Petitioner's Memorandum Of Law at ¶¶5-6).

33. Unique's display of cars, that bear the COBRA Marks, in its facility to prospective customers constitutes use of the COBRA Marks as trademarks in its advertising in violation of Paragraph 5 of the Consent Judgment.

34. Unique's placement of photographs on its website of vehicles displaying the COBRA Marks or colorable imitations thereof constitutes use of the COBRA mark and designs of snakes in advertising in violation of Paragraph 5 of the Consent Judgment.

35. Unique's placement of the COBRA mark in metatags constitutes a use of the COBRA mark in advertising in violation of Paragraph 5 of the Consent Judgment because such use causes Internet search engines to identify Unique's two websites as positive matches for inquiries related to genuine COBRA cars, and also causes those search engines to describe Unique as "a company dedicated to Cobra cars" in a manner visible to Internet users. Metatags which contain trademarks function as trademarks, and their unauthorized use constitutes trademark infringement. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir.

2000) (use of another's trademark in metatags is "significant evidence of intent to confuse and mislead"); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) ("using another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store"). Unique's placement of the COBRA mark in its metatags therefore constitutes use of the COBRA mark as a trademark in advertising in violation of Paragraph 5 of the Consent Judgment.

36.     By advertising in publications and on a web site that prominently use the COBRA mark, Unique is taking advantage of the use of the COBRA mark by others in order to promote its own products and services. Unique is effectively adopting those uses of COBRA as its own. Unique's conduct therefore constitutes use of the COBRA mark as a trademark in advertising in violation of Paragraph 5 of the Consent Judgment.

37.     Similarly, by using framing on its website, as explained by Ford's expert Michael Palage, Unique incorporated content containing the COBRA mark or the Snake Design into the Unique website in a manner that made it appear that this content originated from Unique. *Hard Rock Café v. Morton*, 1999 U.S. Dist. LEXIS 8340 at *75 (S.D.N.Y. 1999) (describing how framing creates a "seamless presentation" that conceals the fact that the content originates from more than one site). Unique's framing therefore constitutes use of the COBRA mark as a trademark in its advertising in violation of Paragraph 5 of the Consent Judgment.

38.     Unique advertises the COBRA Marks through its network of dealers who operate in active concert with Unique to advertise, market and sell Unique's products. Unique's control over its dealers is shown by its instructions to Shaw and Botti, after Ford filed its pending petition, to stop using the COBRA Marks. It is well-established that a defendant may not nullify a decree by carrying out prohibited acts through aiders and abettors. *Regal Knitwear Co. v.*

*NLRB*, 324 U.S. 9, 24 (1945); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). Unique's conduct is similar to that criticized by the Eleventh Circuit in *Abbott Laboratories v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1241 (11th Cir. 2000), in which the Court upheld a finding of contempt against the defendant in a trade dress infringement case who attempted to circumvent a consent judgment by having its retailer customers package defendant's product in a manner that defendant itself was enjoined from doing. Similarly, Unique is using its dealers to generate sales for Unique through use of the COBRA mark in advertising. Such activity by Unique's dealers inures to Unique's benefit, and therefore violates Paragraph 5 of the Consent Judgment.

39.    Unique is using "uniquecobrareplicas.com" and COBRAFEST as trade names, trademarks and service marks to identify their products and services, as well as to identify their business on the Internet and otherwise. Unique's use of tradenames that include the COBRA mark violates Paragraph 5(f) of the Consent Judgment.

40.    The disclaimer that Unique uses in its print and Internet advertising does not substantially comply with Paragraph 6 of the Consent Judgment. Unique's print advertising and website advertising therefore violates Paragraph 6 of the Consent Judgment.

### Remedies

41.    The Court has broad discretion to fashion sanctions for civil contempt. *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990). In cases of repeated contempt, the Court may impose more severe sanctions. *Id*. at 1520 n. 6. A sanction for contempt may be structured both to compensate the party injured by the contempt and to coerce the contemptuous party into compliance with its legal obligations. *Sizzler Family Steak Houses*

*v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986). Parties bound by an injunction are required "to keep a safe distance away from the dividing line between violation of, and compliance with, the injunction" and must "do more than see how close they can come with safety to that which they are enjoined from doing." *Howard Johnson*, 892 F.2d at 1517.

42.     This is the second time that Unique has been found to have violated the Consent Judgment. Each of Unique's uses of the COBRA marks and names set forth above clearly constitutes a violation of the Consent Judgment, and the totality of the circumstances demonstrates Unique's disregard for the Consent Judgment and a substantial contempt.

43.     Unique's conduct, as set forth above, demonstrates that Unique has not attempted to tailor its conduct to avoid the prohibitions of the Consent Judgment, but rather has extended its violations by spreading its misuse of the COBRA mark to the Internet, a medium with broad national and international reach to untold millions of consumers. Unique has also deliberately placed advertisements in publications and on websites that use the COBRA mark. The Court therefore finds that this is an appropriate case for imposing a coercive sanction. *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986).

44.     This case was originally brought under the Lanham Act. Because the Consent Judgment was intended to prevent Unique from infringing the COBRA Marks in violation of the Lanham Act, it is appropriate to use the remedies provided for in the Lanham Act as a basis for awarding relief. *Howard Johnson*, 892 F.2d at 1522.

45.     The Lanham Act specifically provides that a prevailing plaintiff may recover a defendant's profits. 15 U.S.C. §1117(a). Similarly, the Eleventh Circuit has held that "where a plaintiff's harm is difficult to calculate, the court may disgorge the party in contempt of any profits it may have received." *Abbott Laboratories*, 218 F.3d at 1242. The Court believes that an

award of 50% of Unique's profits is a reasonable approximation of Unique's profits from the violations of the Consent Judgment since 1997, since the Court's last Order was entered in October 1996. An award of this amount will help deter Unique from further violations of the Consent Judgment.

46.     Under the Lanham Act, an injured plaintiff need only present proof of an infringer's gross sales in order to shift the burden to the defendant to prove any element of cost or deduction. 15 U.S.C. §1117(a). Unique therefore has twenty-one (21) days in which to submit an itemization of costs and deductions that should be applied against its $3,000,000 in gross sales.

47.     Ford is also entitled to an award of the attorneys' fees reasonably and necessarily incurred in attempting to enforce compliance with the Consent Judgment. *Abbott Laboratories*, 218 F.3d at 1242; *Howard Johnson*, 892 F.2d at 1514, 1519 (upholding award of attorneys' fees and noting defendant's "dilatory and grudging" efforts at compliance with court order). As the prevailing party, Ford is also entitled to an award of court costs. Fed.R.Civ.Proc. 54(d)(1).

48.     In computing attorneys' fees, the Court first computes a "lodestar" amount of fees based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Richey v. Tyson*, 2001 U.S. Dist. LEXIS 6618 at *8 (S.D. Ala., Apr. 6, 2001), *adopted* 2001 U.S. Dist. LEXIS 6542 (S.D. Ala., Apr. 30, 2001); *Gray v. New York Life Ins. Co.*, 906 F.Supp. 628, 637 (N.D. Ala. 1995). Based on the declarations of John Thompson Brown and John E. Hagefstration, the Court finds that the lodestar amount for fees is $207,286.50. Cf. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (affirming award of $925,481.20 in attorneys' fees in a trademark infringement case).

49.    Because this trademark case involved specialized technical issues involving the Internet, as well as significant discovery of Unique and third parties, Ford justifiably spent a considerable sum in attorneys' fees to prosecute this contempt proceeding and bring Unique's violations to light.  Ford's expenditures included, *inter alia*, third party discovery, including depositions; working with an expert witness to help illuminate the Internet issues for the Court; responding to Unique's discovery requests, including a deposition; and Court filings.  The Court therefore finds that no adjustments to the lodestar amount is warranted and therefore awards Ford attorneys' fees in the amount of $207,286.50.

50.    Finally, it is clear that Unique fundamentally does not understand its obligations under the Consent Judgment.  In filings before this Court, Unique has argued that the statement in Paragraph 7 of the Consent Judgment that "it is not a violation of the Consent Judgment to affix badges or decals to Unique products which contain the word COBRA as long as they prominently display Unique's name or logo in larger letters" allows Unique to affix badges bearing the COBRA mark so long as the UNIQUE MOTORCARS name appears anywhere on Unique's cars and car kits.  This reading cannot be reconciled with the rest of Paragraph 7, which limits Unique's use of the COBRA mark to factual and historical uses.

51.    Unique's conduct demonstrates that it does not understand the difference between historical uses of the COBRA Marks and trademark uses of the COBRA Marks.  In order to prevent consumer confusion and irreparable harm to Ford, the Court concludes that it is appropriate to enter an order that will clarify Unique's obligations and ensure that Unique does not misuse the COBRA Marks.  *Sizzler*, 793 F.2d at 1539 (affirming power of district court to modify injunctions to impose more stringent requirements). On the facts before this Court, Unique will be able to advertise its copies of a famous racing car without referring to COBRA.

(See, Order of February 11, 2002 in *Ford Motor Co. v. Factory Five Racing, Inc.*, C.A. No. 00-10399 RWZ (D. Mass.) (Exhibit L)).

### ORDER

The Court hereby orders that:

(a)     Unique shall comply fully and completely with all provisions of the 1989 Consent Judgment;

(b)     Unique shall provide actual notice of the 1989 Consent Judgment, this Order, and any subsequent orders that may be entered by the Court in this case, to Operations Plus of Fountain Valley, California; Mid-South Gear of Knoxville, Tennessee; Sarno Racing of Harrisburg, Pennsylvania; Botti Enterprises of South Windsor, Connecticut; Joe Garland of Austin, Texas; SEA, Inc. of Kennewick, Washington; and Fantastic Cobras of Centre Hall, Pennsylvania, and any and all other individuals, entities, or agents that act as dealers for Unique's products or who purchase Unique's products with the intent to re-sell them to third parties;

(c)     Unique shall be enjoined and prohibited from all further use of the COBRA and Snake Design marks in connection with its products and services, including the uses previously permitted by Paragraph 7 of the 1989 Consent Judgment.

(d)     Unique shall pay to Ford within 30 days of entry of this Order, Ford's attorneys' fees in the amount of $207,286.50.

(e)     Unique shall have twenty-one (21) days from entry of this order to file an itemization of costs and deductions that it contends should be applied against its $3,000,000 in gross sales for purposes of computing the profits to be awarded to Ford.

IT IS SO ORDERED this _____ day of _____, 2002.

<br>

_____
William M. Acker, Jr.
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**FORD MOTOR COMPANY, a corporation,**

    **PLAINTIFF,**

**VS.**                                **CIVIL ACTION NO. CV 89 G1085**

**UNIQUE MOTORCARS, a limited partnership,**

    **DEFENDANT.**

### ORDER

This matter coming before the Court upon Ford's Motion To Show Cause Why Respondent Should Not Be Held In Contempt,

And the Court having considered the various briefs and arguments of the parties respective counsel, it is ORDERED, ADJUDGED AND DECREED that:

A.      This Court has continuing jurisdiction over the parties in the subject matter hereof.

B.      The Plaintiff, Ford Motor Company ("Ford"), is a Delaware corporation with its principal place of business in Dearborn, Michigan.

C.      The Defendant, Unique Motorcars ("Unique"), is an Alabama partnership doing business in the State of Alabama with its principal place of business in Gadsden, Alabama.

D.      Ford owns the trademark COBRA for all automobiles, automobile parts and the Federal Trademark Registration of COBRA Number 807,185.

1

EXHIBIT "B"

E.      The Court finds, ex mero motu that due to the passage of time and changing circumstances the Consent Judgment entered by this Court on October 18, 1989 is in need of amendment to discourage further controversy between the parties. Therefore, Paragraph 7 of the October 18, 1989 Consent Judgment is hereby amended to read as follows:

7.  It shall not be a violation of this Order for Unique to manufacturer and sell replicas, replicars or car kits of the historic COBRA automobile.  It shall not be a violation of this Order for Unique to describe its product as a "cobrareplica" or as a "Unique cobrareplica", or as a "Unique cobra repilca car" in its sales, promotions, and advertising of its product.  For example, it shall not be a violation of this Order to use advertising phrases such as "1967 cobrareplica".

F.      The Consent Judgment of October 18, 1989 is further amended by adding the following Section 9, to read as follows:

9.   After (date), if the Plaintiff asserts that the Defendant is in violation of the Consent Judgment, as herein amended, it shall give written notice to the Defendant of the alleged violation of the Order and demand that those violations be cured within thirty (30) days.

G.      The Court finds that Unique has technically violated the Consent Judgment of October 18, 1989, and further finds that the Plaintiff is entitled to an award of a reasonable attorney's fees and costs as may be awarded by this Court.  The Plaintiff is directed to submit itemizations of claimed legal fees and expenses to the Court and to the Defendant within thirty (30) days.

H.      The Court finds that the advertising and use of the phrase "Cobrafest" is a violation of the October 18, 1989 Consent Judgment and the Defendant is

2

enjoined from further use of that name in any manner.  The Court further finds that the use of the name "Uniquecobrareplicars.com" or the phrase "Unique Cobrareplicars" is not a violation of the trademarks and registrations owned by Ford, but is an expression of the product manufactured by the Defendant, and is not a violation of the Consent Judgment of October 18, 1989.

I.  The Court further finds that the existing link to Uniquemotorcars.com which appears upon the Cobra Country.com website does not violate Ford's trademark rights, as long as the Defendant is in compliance with the other provisions of the Consent Judgment of October 18, 1989 as amended by this Order, and its products are clearly marketed as cobrareplicars.

J.  The Defendant may use the word or phrase "cobrareplica" or "cobrareplicar" as a metatag for its websites.

This Order entered this _____ day of _____, 2002.


                                        _____

                                        United States District Court Judge

3